**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

RUSLAN BOGATYREV,

Petitioner,

v. No. 2:26-cv-00628-DHU-KK

DORA CASTRO, Warden, Otero County Processing Center; MARY DE ANDA-YBARRA, Field Office Director, El Paso Field Office, United States Immigration and Customs Enforcement; TODD M. LYONS, Acting Director, United Immigration and Customs Enforcement; KRISTI NOEM, Secretary of Homeland Security; and PAMELA JO BONDI, Attorney General of the United States,

Respondents.

**ORDER GRANTING IN PART HABEAS PETITION**

THIS MATTER comes before the Court on Petitioner Ruslan Bogatyrev's Verified Petition for Writ of Habeas Corpus ("Petition"). Doc. 1. Having carefully considered the parties' briefs, the record, and the relevant law, the Court will **GRANT IN PART** the Petition and order Respondents to provide Petitioner with an individualized bond hearing before a neutral Immigration Judge ("IJ") within seven (7) days of entry of this Order.

## I. BACKGROUND

Petitioner Ruslan Bogatyrev is a native and citizen of Russia who entered the United States on December 6, 2022, at the San Ysidro Port of Entry, seeking asylum. *Id.* ¶ 27; Doc. 1-4 at 1. Upon entry, the Department of Homeland Security ("DHS") issued Petitioner a Notice to Appear, which charges him as an "arriving alien." Doc. 1 ¶ 29; Doc. 1-4 at 1. DHS also paroled Petitioner

into the United States pursuant to 8 U.S.C. § 1182(d)(5), for a period of one year. Doc. 1 ¶ 28; Doc. 1-3.

After being paroled, Petitioner timely filed an Application for Asylum; he was subsequently issued an Employment Authorization Document, better known as a work permit. Doc. 1 ¶¶ 29, 31. On or about January 9, 2026, Petitioner encountered Immigration and Customs Enforcement ("ICE") and was detained. *Id.* ¶ 32; Doc. 11 at 2. He was eventually transferred to the Otero County Processing Center, in Chaparral, New Mexico, where he remains detained. Doc. 1 ¶ 32.

Petitioner subsequently filed the instant Petition arguing that his re-detention after previously being paroled violates the Immigration and Nationality Act ("INA") and the Due Process Clause of the Fifth Amendment. *Id.* ¶¶ 96-111.[1] He requests a Writ of Habeas Corpus ordering Respondents to immediately release him from custody, or, alternatively, ordering Respondents to provide him with a bond hearing. *Id.* at 29. He also requests attorney fees and costs pursuant to the Equal Access to Justice Act ("EAJA"). *Id.*

Respondents filed a combined response and Motion to Dismiss. Doc. 11. Respondents first argue that the Court lacks jurisdiction to hear Petitioner's claims because it would require that the Court review a § 1225(b)(1) determination. *Id.* at 7-9. Respondents further argue that, if the Court has jurisdiction, the termination of Petitioner's parole was lawful, and that Petitioner's due process rights were not violated because, as an applicant for admission, he is entitled to no additional

---

[1] Petitioner also argues that his re-detention violates the Administrative Procedure Act ("APA"). *Id.* ¶¶ 112-20. However, because the Court grants Petitioner's Petition on his INA and Due Process claims, the Court "declines to address th[is] remaining claim[] of error." *Scott v. Mullin*, 303 F.3d 1222, 1232 (10th Cir. 2002).

process than what is provided by the statute. *Id.* at 10-12. They request that the Court dismiss or deny the Petition. *Id.* at 13.

Petitioner filed a reply, asserting that the Court has jurisdiction, that his parole was never terminated, that he cannot be subject to mandatory detention under § 1225, and that he has a protected liberty interest in his continued release. *See generally* Doc. 12.

## II.
## LEGAL STANDARDS

Habeas relief is available when a person "is in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). Petitioner argues that he has been re-detained after previously being paroled in violation of the INA and the Due Process Clause.

The Due Process Clause of the Fifth Amendment prohibits the Government from depriving any person of liberty without due process of law. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690, 121 S.Ct. 2491 (2001). The Due Process Clause's protections extend to all persons in the United States, including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693.

The INA and its implementing regulations outline the appropriate procedures for the detention and removal of noncitizens without legal status in the United States. "Noncitizens who arrive at a port of entry without a visa or other entry document[s] . . . are deemed 'inadmissible' under 8 U.S.C. § 1182(a)(7)." *Y-Z-L-H v. Bostock*, 792 F.Supp.3d 1123, 1132 n.7 (D. Or. 2025). Once a noncitizen is deemed inadmissible, "the immigration officer must order the noncitizen's removal unless the noncitizen indicates an intention to apply for asylum or fear of persecution." *Id.* (citing 8 U.S.C. § 1225(b)(1)(A)(i)). The government may place the noncitizen into expedited

removal proceedings, *see* § 1225(b)(1), or into regular removal proceedings under 8 U.S.C. § 1229(a), *see* § 1225(b)(2).

Two provisions of the INA govern the detention of noncitizens with pending removal proceedings. The first, §1225, "governs the processing of noncitizens at the Nation's borders and ports of entry." *Santillan Quiroz v. Mullin*, 180 F.4th 1226, 1236 (10th Cir. 2026). This includes noncitizens subject to expedited removal under § 1225(b)(1) and certain "applicant[s] for admission" seeking admission under § 1225(b)(2). "[I]n the case of [a noncitizen] who is an applicant for admission, if the examining immigration officer determines that [a noncitizen] seeking admission is not clearly and beyond a doubt entitled to be admitted, the [noncitizen] **shall** be detained" for removal proceedings, absent some extraordinary circumstances not applicable here. § 1225(b)(2)(A) (emphasis added).

However, under 8 U.S.C. § 1182(d)(5)(A), "applicants for admission may be temporarily released [into the United States] on parole 'for urgent humanitarian reasons or significant public benefit.'" *Jennings v. Rodriguez*, 583 U.S. 281, 288, 138 S.Ct. 830 (2018). The decision to grant parole is determined "on a case-by-case basis" and rests within the discretion of the Secretary of Homeland Security. § 1182(d)(5)(A). Then, "when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the [noncitizen] shall forthwith return or be returned to the custody from which he was paroled[.]" *Id.* Termination of parole under these circumstances requires notice, 8 C.F.R. § 212.5(e)(2), unless the noncitizen parolee departs from the United States or the time for which parole was authorized expires, in which cases parole automatically terminates without notice, § 212.5(e)(1).

## III.
## DISCUSSION

### A. The Court Has Jurisdiction

The Court briefly addresses jurisdiction before turning to Petitioner's claims. Respondents argue that this Petition requires the Court to review a § 1225(b)(1) determination, and that the Court lacks jurisdiction to do so. Doc. 11 at 7-9. Petitioner argues that the Court has jurisdiction because he is not seeking review of expedited removal proceedings and is, instead, challenging his re-detention. Doc. 12 at 3.

The INA strips courts of jurisdiction to review "any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to [§] 1225(b)(1)." 8 U.S.C. § 1252(a)(2)(A)(i). Additionally, no court shall have jurisdiction to review "a decision by the Attorney General to invoke the provisions" of § 1225(b)(1), "the application of [the] section, or "procedures and policies adopted by the Attorney General to implement" the section. *Id.* § 1252(a)(2)(A)(ii)-(iv). Although judicial review of "determinations made under § 1225(b)(1) is available in habeas proceedings," the review is limited to the following determinations: 1) whether the petitioner is a noncitizen; 2) whether the petitioner was ordered removed under § 1225(b)(1); and 3) whether the petitioner can prove by a preponderance that he is a noncitizen lawfully admitted for permanent residence, is lawfully admitted as a refugee, or has been granted asylum. *Vaupel v. Ortiz*, 244 F. App'x 892, 894 (10th Cir. 2007) (citing § 1252(e)(2)(A)-(C)).

While Respondents correctly assert that the Court does not have jurisdiction to review a § 1225(b)(1) determination, they mischaracterize the nature of Petitioner's challenge and seek to broaden § 1252's application beyond what the statutory language permits. As an initial matter, in *Vaupel*, the Tenth Circuit found it lacked jurisdiction to review an expedited removal order but did

not address the appellant's challenge to his continued detention, finding it moot. *Id.* at 896. *Vaupel* therefore does not stand for the proposition that challenges to mandatory detention under § 1225 are beyond this Court's power to review. In fact, reading § 1252 alongside § 1225 makes clear that its jurisdiction-stripping language is focused on discretionary determinations as to admissibility and removal, not the application and legality of § 1225's mandatory detention provision. This reading is also in accord with the Supreme Court's characterization of § 1252 as aimed at protecting the Executive's *discretion* in immigration matters. *See Dep't of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 112, 140 S.Ct. 1959 (2020); *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 486-87, 119 S.Ct. 136 (1999).

Moreover, Petitioner here is not subject to a final order of removal; he is also not contesting any discretionary decision made by the Attorney General as to his admissibility, credible fear of persecution, or entitlement to asylum. These are the "determinations" that §§ 1252(a)(2)(A) and (e) seek to insulate from judicial review, and they are not implicated here. Petitioner here is, instead, only contesting the legality of his mandatory detention status. This falls squarely within this Court's habeas corpus jurisdiction. *See* 28 U.S.C. § 2241; *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) ("Challenges to immigration detention are properly brought directly through habeas.") (citing *Zadvydas*, 533 U.S. at 687-88).

**B. Petitioner's Re-Detention After the Expiration of His Parole Was Lawful**

Petitioner alleges that his parole was unlawfully and prematurely terminated without notice and before its purposes—in this case, applying for asylum—had been served. Doc. 1 ¶¶ 71-84. In addition to providing for parole, Section 1182(d)(5)(A) states that "when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the [noncitizen] shall forthwith return or be returned to the custody from which he was paroled[.]"

This seemingly grants the Executive Branch broad discretion to determine when the purposes of parole have been served and to revoke parole accordingly. However, the Supreme Court of the United States and Tenth Circuit Court of Appeals suggest that parole decisions must be individualized. *See Jean v. Nelson*, 472 U.S. 846, 857, 105 S.Ct. 2992 (1985) (requiring individualized determinations as to parole under § 1182(d)(5)(A); *Marczak v. Greene*, 971 F.2d 510, 515 (10th Cir. 1992) (same).

However, the evidence provided by Petitioner shows that his parole term expired on December 5, 2023. *See* Doc. 1-3. Petitioner was detained over two years later, in January 2026. Doc. 1 ¶ 32. Section 1182's implementing regulations clarify that parole automatically terminates **without written notice** upon a noncitizen's departure from the United States or **at the expiration of the time for which parole was authorized**. 8 C.F.R. § 212.5(e)(1) (emphasis added). And the Tenth Circuit Court of Appeals has made clear that the Due Process Clause does not provide noncitizens in Petitioner's position with a liberty interest in being released on parole. *See Sierra v. INS*, 258 F.3d 1213, 1218 (10th Cir. 2001). As a result, the only process with respect to parole that Petitioner is entitled to is the process provided for by statute and/or regulations. *See Thuraissigiam*, 591 U.S. at 140 (stating that noncitizens who have not "effected an entry" into the country have "only those rights regarding admission that Congress has provided by statute"). Because the statute and regulations require no notice or additional process for parolees whose parole term expires, Petitioner was not entitled to any additional process before his parole could end.

**C. Petitioner Is An "Arriving Alien" Subject to Mandatory Detention Under § 1225(b)(1)**

Petitioner entered the country at the San Ysidro Port of Entry and is therefore an "arriving alien" as defined in the INA's implementing regulations. *See* 8 C.F.R. § 1.2 ("Arriving alien means an applicant for admission coming or attempting to come into the United States at a port-of-

entry.”). Before his parole, Petitioner was subject to mandatory detention under § 1225(b)(2)(A), which states, “if an examining immigration officer determines that a [noncitizen] seeking admission is not clearly and beyond a doubt entitled to be admitted, [he] **shall** be detained for a proceeding under [Section 1229(a)].” (emphasis added). The INA’s implementing regulations regarding parole confirm that this same provision applies after Petitioner’s parole expires. Indeed, the INA’s implementing regulations state that, when parole expires or is terminated, the noncitizen “shall be restored to the status that he or she had at the time of parole.” 8 C.F.R. § 212.5. And 8 C.F.R. § 1.2 makes clear that parolees are “arriving aliens” and remain so even after any such parole is terminated or revoked. At least one other court in this district has found that a noncitizen detained by DHS upon revocation of his parole returned to his previous status under § 1225. *Valera-Marin v. Lyons*, No. 2:25-cv-00914-KG-GBW, 2025 WL 3687978, at *3 (D.N.M. Dec. 19, 2025) (Gonzales, C.J.). The fact that Petitioner remained in the United States after his parole expired does not subject him to § 1226, as the plain language of the statute and regulations makes clear that after his parole ended, Petitioner once again became subject to the provision of the INA mandating his detention. *See Mendibaev v. Lyons*, No. 1:25-cv-01308-DHU-GBW, 2026 WL 917457, at *4 (D.N.M. Apr. 4, 2026).

**D. The Due Process Clause Applies to Petitioner and Requires an Opportunity for Release on Bond**

1. <u>“Entry Fiction” Limits Petitioner’s Due Process Rights with Respect to Admission and Parole, Not Necessarily Pre-Removal Detention</u>

“Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects.” *Zadvydas*, 533 U.S. at 690. The Due Process Clause’s protections extend to **all** persons **within the United States**, including noncitizens, “whether their presence here is lawful, unlawful, temporary, or permanent.” *Id.* at 693

(emphasis added). However, under the "entry fiction," noncitizens "who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are treated for due process purposes as if stopped at the border." *Thuraissigiam*, 591 U.S. at 139 (citation and internal quotation omitted); *accord Sierra*, 258 F.3d at 1218. This is because such noncitizens cannot be said to have "effected an entry" into the country, so they have "only those rights regarding admission that Congress has provided by statute." *Thuraissigiam*, 591 U.S. at 140. In *Thuraissigiam*, the Supreme Court applied this principle to a noncitizen challenging his expedited removal after he was detained just twenty-five (25) yards over the border after entering without inspection. *See id.*

The Tenth Circuit has also applied the entry fiction in the parole context, holding that noncitizens possess no liberty interest in being released on parole and therefore limiting their due process rights regarding parole to the procedures authorized by Congress. *Sierra*, 258 F.3d at 1218-19. The facts in *Sierra* center around a Cuban citizen who was paroled into the United States, later convicted of several crimes, ordered removed, and remained detained when Cuba would not accept him back. *Id.* at 1216. After he was initially approved for parole, that approval was withdrawn after an alleged fight while in prison. *Id.* He filed a habeas petition, arguing he was entitled to a hearing on the withdrawal of his parole. *Id.* Applying the entry fiction and limiting his due process rights, the Tenth Circuit dismissed his petition because "[n]either the statutes nor the governing regulations require a hearing on parole withdrawal." *Id.* at 1219.

Petitioner in this case has not "effected an entry" into the country, like the petitioner in *Thuraissigiam*, and was instead paroled, like the petitioner in *Sierra*. Applied to Mr. Bogatyrev, the above-cited case law makes clear that Petitioner's due process rights regarding his parole and his admission into the country are limited to the procedures authorized by Congress in the relevant

statutes and regulations. However, the similarities stop there, and there are important distinctions that limit the applicability of *Thuraissigiam* and *Sierra*. First, Petitioner does not challenge the removal proceedings against him, nor does he argue he is entitled to be released on parole. Instead, he argues that during his three years of living in the United States, he accrued a general liberty interest which entitles him to release, or at the very least, an opportunity to seek bond while his removal proceedings are pending. Doc. 1 ¶¶ 52-54.[2]

Second, Petitioner was not arrested twenty-five (25) yards from the border shortly after entering, like the petitioner in *Thuraissigiam*, but rather was arrested in St. Paul, Minnesota after living and working freely and lawfully in the United States for over three years. And unlike the petitioner in *Sierra*, Mr. Bogatyrev has no criminal history and has no final order of removal. These factual distinctions are important. To apply the entry fiction in this case "requires a much greater sleight of hand than is provided for in those prior cases." *Rincon*, 810 F.Supp.3d at 112; *see also Tenamasa-Lema v. Hyde*, 810 F.Supp.3d 244, 253 (D. Mass. 2025) ("[E]ven *without* disturbing the metaphysical 'entry fiction' that may obstruct, in some senses, our ability to admit that a non-citizen is really 'here,' one can still constitutionally recognize Petitioner's actual life in this country—his years as part of our community—[is] not so easily set aside."). These facts further support distinguishing *Thuraissigiam* and *Sierra* and finding that Petitioner's due process rights with respect to his **detention pending removal proceedings** flow not from the entry fiction but from his geographic presence inside the country.

---

[2] Some district courts grappling with similar facts have more narrowly read *Thuraissigiam* as protecting Congress's "sovereign prerogative" over admission and exclusion and limiting noncitizens' due process rights regarding **admission**, not necessarily regarding **pre-removal detention**. *See, e.g., Rincon v. Hyde*, 810 F.Supp.3d 101, 110-11 (D. Mass. 2025); *Walizada v. Trump*, 2025 WL 3551972, at *16 (D. Vt. Dec. 11, 2025).

It is true that detention during removal proceedings has been upheld as "a constitutionally valid aspect of the deportation process." *Demore*, 538 U.S. at 523. Nevertheless, the Due Process Clause imposes limits even on mandatory immigration detention; it must "bear[] a reasonable relation to the purpose for which the individual was committed." *Id.* at 527 (quoting *Zadvydas*, 533 U.S. at 690). The petitioners in *Demore* challenged their detention under 8 U.S.C. § 1226(c), which at the time, mandated detention for noncitizens convicted of aggravated felonies. The purpose of detention, the Supreme Court found, was to ensure that noncitizens convicted of crimes appeared for immigration hearings and did not remain at large in the United States unlawfully. *Id.* at 528. No such justification applies to noncitizens like Mr. Bogatyrev, who have no criminal history whatsoever, have pending applications for affirmative immigration relief, and possess significant ties within the United States. *See Rincon*, 810 F.Supp.3d at 113-14 (distinguishing *Demore*). Nor has the Government articulated how mandatory detention of formerly paroled asylum seekers is reasonably related to ensuring appearance in immigration court or any other immigration purpose. *See* Doc. 11. Accordingly, just like any other noncitizen present within the United States, the Court finds that Mr. Bogatyrev's detention is limited by the demands of the Due Process Clause.

2. Petitioner Accrued a Liberty Interest in Freedom from Immigration Detention[3]

Having established that Petitioner is protected by the Due Process Clause for the purposes of his detention, we now must determine the contours of that protection in this case. Courts analyze procedural due process claims in two steps: the first asks whether there exists a protected liberty

[3] The Court recognizes that Petitioner has no liberty interest in release on parole. *See Sierra*, 258 F.3d at 1218. However, the Court distinguishes between the specific interest in being paroled and a more general liberty interest in freedom from immigration detention while removal proceedings remain pending.

interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivations of that protected liberty interest accords with the Constitution. *See Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904 (1989).

The Supreme Court has said multiple times that individuals have a liberty interest in their conditional release. *See, e.g., Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593 (1972). And courts have answered the first question—whether there is a protected liberty interest—by comparing the facts of the case before them to those in *Morrissey*, where release allowed the individual "to do a wide range of things" characteristic of everyday life, including being "with family and friends and [forming] the other enduring attachments of normal life." *Id.* at 482.

Like the parolee in *Morrissey*, Mr. Bogatyrev's parole allowed him to do a wide range of things. Petitioner lived in St. Paul and developed strong family and community ties. Doc. 1 ¶ 99. He also maintained gainful employment, under a valid work permit. Doc. 1 ¶ 6. Petitioner also sought lawful status in this country by filing a timely Application for Asylum. *Id.* These relationships and obligations are the very kind contemplated in *Morrissey* and demonstrate the liberty interest accrued by Petitioner during the more than three years he has lived with relative freedom in this country.

3. <u>Applying the *Mathews v. Eldridge* Framework, the Due Process Clause Requires that Petitioner Be Provided a Bond Hearing</u>

In analyzing what procedures sufficiently protect due process in the immigration context, courts have applied the framework established in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893 (1976). *See, e.g., Landon v. Plasencia*, 459 U.S. 21, 34, 103 S.Ct. 321 (1982); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206-07 (9th Cir. 2022) (assuming without deciding that *Mathew* applies); *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020); *Hernandez v. Cremer*, 913 F.2d 230, 238 (5th Cir. 1990). Several district courts within the Tenth Circuit, too, have applied *Mathews*

when addressing due process claims related to immigration detention. *See, e.g., Hernandez-Parrilla v. De Anda-Ybarra*, No. 2:25-cv-01224-MIS-KK, 2025 WL 3632769, at *5 (D.N.M. Dec. 15, 2025); *Barreno v. Baltasar*, No. 025-cv-03017-GPG-TPO, 2025 WL 3190936, at *3 (D. Colo. Nov. 14, 2025); *Garcia Cortes v. Noem*, No. 1:25-cv-02677-CNS, 2025 WL 2652880, at *4 (D. Colo. Sept. 16, 2025). To determine the process due to an individual, *Mathews* requires the Court to balance (1) the private interest affected by the official action, (2) the risk of erroneous deprivation of such interest through the procedures used and the probable value of additional or different procedural safeguards, and (3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail. 424 U.S. at 335.

Turning to the first *Mathews* factor, the Court finds that Petitioner has a significant private interest in remaining free from detention after living freely outside of immigration custody. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the [Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. As mentioned previously, Petitioner was out of immigration custody for over three years before being re-detained by ICE, during which time his interest in release grew even stronger as he worked and lived freely alongside family and other community members. His private interest in freedom from detention is therefore substantial. *See* Doc. 1 ¶¶ 48-50.

The second *Mathews* factor is a closer call. The risk of erroneous deprivation is considerable in this case where ICE previously paroled Petitioner in order to seek asylum, Petitioner's affirmative asylum application remains pending, and the Government did not extend Petitioner's parole despite his pending asylum application, compliance with the conditions of his parole, and significant family and community ties in the United States. On the other hand, as the Government points out, Petitioner is properly subject to mandatory detention under the statute. *See*

Doc. 11 at 10. In considering the probable value of additional or different procedural safeguards, the equities tip in favor of a bond hearing, rather than release, where the Petitioner still bears the burden of showing why release on bond is warranted in this case. This helps ensure Petitioner is not erroneously deprived of his liberty interest in release while recognizing that detention is mandated by the statute.

Finally, the third *Mathews* factor favors Petitioner as well. While the Government certainly has a strong interest in enforcing its immigration laws, its interest in detaining noncitizens absent a rational reason for doing so is low. The justification for mandatory detention of "arriving aliens" subject to expedited removal carries little weight in this case, where Petitioner has developed significant ties to the United States and where his removal proceedings are not being dealt with in an expedited fashion. Requiring a bond hearing does not impose a significant fiscal or administrative burden on the Government, nor does it undermine the Government's "sovereign prerogative . . . to decide which [noncitizens] to admit[,]" *Landon*, 459 U.S. at 32, as Petitioner's removal proceedings—and the Government's discretion over them—will continue regardless of his detention status.

On balance, the Court finds that under the three *Mathews* factors, the Due Process Clause entitles Petitioner to an opportunity to seek release on bond at a custody redetermination hearing. However, given that the statutory scheme applicable to Petitioner contemplates mandatory detention, the Court declines to shift the burden of proof to the Government at said hearing. As is typical of custody redetermination hearings in immigration court, the Petitioner will bear the burden of demonstrating that he is not a flight risk or a danger to his community.

In requiring a bond hearing, this Court does **not** interfere with Petitioner's removal proceedings in immigration court or make any finding regarding his admissibility and/or eligibility

for asylum or parole. Instead, the Court limits itself to assessing Petitioner's statutory and constitutional rights regarding pre-removal detention, which falls well within its authority to do. *See Zadvydas*, 533 U.S. at 687; *Soberanes*, 388 F.3d at 1310 ("Challenges to immigration detention are properly brought directly through habeas.").

## IV. CONCLUSION

For the reasons stated above, Petitioner's Verified Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED IN PART**.

**IT IS THEREFORE ORDERED** that Respondents provide Petitioner an individualized bond hearing before a neutral Immigration Judge ("IJ") within 7 days of entry of this Order. If Petitioner does not receive such a hearing on or before August 25, 2026, he shall be immediately released.

**IT IS FURTHER ORDERED** that the parties submit a joint status report to the Court no later than August 26, 2026, confirming whether a bond hearing was held and the result of said hearing.

**IT IS FURTHER ORDERED** that Petitioner may submit an application for fees and costs pursuant to the EAJA within thirty (30) days of this Order. Respondents may respond to Petitioner's application no later than fourteen (14) days after the application is filed with the Court.

Finally, because the Court is adjudicating Petitioner's Petition for Writ of Habeas Corpus and granting him relief in this Order, his pending Motions for Order (Docs. 13 and 15) are **DENIED AS MOOT**. The Court will issue a separate final judgment but retain jurisdiction over the matter to ensure compliance with this Order.

**IT IS SO ORDERED.**

HONORABLE DAVID HERRERA URIAS
UNITED STATES DISTRICT JUDGE